ORIGINAL
COURT COPY

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANK W. RUPP and DOUGLAS J. GOULD and ALL PARTIES OF INTEREST.          Plaintiffs, | 08     1939 |
| | Docket No._____ SBA |
| | |
| V. | **PETITION TO FILE** |
| | **COMPLAINT and** |
| | **INJUNCTION** |
| FIRST AMERICAN TITLE COMPANY, a California corporation.      Defendants. | |
| _____/ | |

The address for Plaintiff FRANK W. RUPP is 439 Butterfield Cathedral City, California 92234 phone # 760-208-4674.

The address for Plaintiff DOUGLAS J. GOULD is Ritter House Homeless Services, 16 Ritter Street P.O. 3517 San Rafael California 94901 phone # 415-457-7372 ex 446.

The address for ALL PARTIES OF INTEREST is that of Law Enforcement Departments in and for the State of California and the State of Nevada and the United States Justice Department.

The Plaintiffs respectfully request in the name of Justice for this Document to go before the **HONORABLE MARILYN HALL PATEL** for the following reasons;

1, A complaint was filed as case # C0705954MHP which contains much information of truth and facts of law which pertain to this document.

2, To allow Her Honor to exercise the Freedom of the related information with this complaint.

## DOCUMENT NAME

Deprivations of Federally Protected Due Process Law and Equal Protection Rights.

## JURISDICTION

Pursuant to the Federal Laws and Rules of Civil Procedures of this Court for Jurisdiction. The Plaintiffs have Exhausted All Remedies in Accordance with the Federal Rules of Civil Procedure to have this Complaint Entered before this Court for Judicial Review.

## COMPLAINT CASE HISTORY

Plaintiff Frank W. Rupp,( herein known as Rupp ) sold his residence condo in the City of San Francisco California in or about June 2003. About 4 to 5 days after the correct amount for the sale of the condo was wire transferred into his bank account, First American Title Company ( herein known as Fatco ) Telephoned Rupp and said they over looked an Appreciation Fee attached to a loan from the Mayors Office of Housing Program in the amount of $ 75,400,37 and demanded for Rupp to send the said amount to them from the agreed amount that he got from the sale of his condo. Please see the Final Closing Statement as Exhibit ( 1 ). Rupp received the correct amount offered from the Buyer. On or about July 2003, Fatco filed a complaint in the Washoe District Court in Reno Nevada, stating to that Court that they made a ( **MISTAKE** ) and ( **OVER PAID** ) Rupp $ 75,400,37 that was meant to be paid to the Mayors Office of Housing. Plaintiff Rupp received the correct amount allowed by Law under a Legal written Binding Executed California Contract. Unknown to Rupp, when the Complaint was filed, Fatco requested an pre-Summary Judgement of Garnishment which was granted by the Court and was used to take

( 1 )

about $ 20,000 from Rupps Bank account. On or about August 1 2003, Fatco paid the Appreciation Fee to the City of San Francisco Mayors Office Housing Program by check in the full amount of $ 75,400,37, which is the Garnishment amount.

## FACT OF LAW

The defendant, by representing the interest of the Buyer, the defendant is bonded to the California Residential Contract Agreement. Please see the updated     ( **CONSUMERS TITLE INSURANCE OVERVIEW** ) Provided by the California Department of Insurance as Exhibit ( 2 ), which clearly explains Title Insurance is in the best interest of the Buyer when buying a Home for reason if any MISTAKES are made in examining Public records as such happen here when the defendant made a mistake and a Fee was overlooked that was on record with the Mayors Office of Housing who had claim to the Title in which that Fee of $ 75,400,37 should have been subtracted from the Final Closing Statement payment being paid to Rupp, and which the seller has the right not to accept any offer less then the amount on the Final Closing Statement. Please see California Contract Agreement Right to Refuse Offer Clause on page___, as Exhibit ( 3 ).  The Insurance Overview also states as to whom is required to pay for the Title Insurance, in this case Rupp paid as stated on page___ of the Contract. The defendant was required to pay the $ 75,400,37 to the Mayors Office, Frank W. Rupp  was not paid an Insurance Coverage Fee nor is he an Title Insurance Company that is required to pay the $ 75,400,37 Mistake. The fact is, if the Mistake was found before Rupp received the final payment, he would have been allowed by Law not to accept the Final offer of $ 75,400,37 less, and not sell and hold the condo and sell at a later date to off set that Fee, or have Arbitration and receive a waiver of the Fee in which it is allowed by Law for the Mayors Office Housing Program to accept when it's a waiver for an attachment Fee only and not for an actual money loan which they could not accept such waiver of a loan.

Rupp could have added the $ 75,400,37 fee to the asking price of the condo which is allowed by Law. The fact is the defendant could not have made a Mistake and over paid Rupp as claimed when the Fee of $ 75,400,37 is not even listed on the Final Closing Statement. The Mistake was made when someone(s) did not do their Job by not finding the $ 75,400.37 Fee as required by Law before the Close of escrow or before the Final payment on the Closing Statement was wired to Frank W. Rupps bank account, and when Rupp received his $ 170,557.84 cash as directed on the Final Statement, and the Title transferred over to the Buyer, the sale was final and closed for the Seller who is Rupp in this case. The Plaintiff Frank W. Rupp no longer had obligation to the Contract Sale of that Condo. It was an illegal procedure for the defendant to go after Mr Rupp either in California or Nevada, and was not even proper protocol by Governed Rule for the defendant to even have considered to go after the Plaintiff for the $ 75,400.37 Mistake. Here is a closing fact for this Court to ponder. Were did the defendant get the $ 75,400.37 to pay the Mayors Office ?  The defendant did not get it from Rupp because the $ 20,000 taken from Rupp is being held onto by the Washoe County Sheriffs department in Nevada. Did the defendant get it from the Buyer without her right to Arbitration ? In other words, if the defendant, even after being paid an insurance coverage Fee felt and believed  they did not have to pay for that Mistake as required and get a Garnishment upon Frank W. Rupp, and because the defendant made it clear when they went after Rupp that they were not going to pay the Mistake Fee out of their pocket, so who's to say the defendant somehow got the Buyer to pay the $75,400.37 ? The defendant has made it very clear that they are not going to pay that Fee! And if the defendant did indeed get the money from the Buyer, that would make it very clear the defendant was paid two different times of the same amount of $ 75,400.37 which is illegal. The truth is the defendant acted illegal when they went after Rupp for the $ 75,400.37 and it became a Federal case when it crossed the State line into Nevada.                    ( 3 )

## STATEMENT OF FACT

The Plaintiffs tried to resolve this illegal act of the defendant by having them come into Compliance in which the defendant would have had to withdraw their Complaint from the Washoe Reno District Court in Nevada. But because of the Summary Judgement in Nevada, the State of California is powerless to act against the defendant, this was made very clear by the defendant when they told the senor investigator of the California State Department of Insurance that they had a Judgement to stand by and will not return any money back to Mr Rupp. In a recent letter from the California Attorney General Office, that department states they can not do anything because of the same said Summary Judgement in the State of Nevada. In or about 2004, the Plaintiff Frank W. Rupp filed a Breach of Executed Contract in a California State Court as First American Title named as the defendant and not the Buyer, and again due for reason of the Summary Judgement in Nevada, the case was withdrawn and dismissed from that Court. Again the State of California is helpless to force the defendant to come into compliance because of the Summary Judgement even when they broke the Law and State Insurance Rules by going after Rupp because of the Judgement. But however, when they broke those Rules and law here in this State, and then crossed the State Line into Nevada, it became a Federal Case regardless if the Court in Nevada even if the Complaint against Rupp was Sustain or even dismissed. Its no different when someone steals a car and uses it to commit a crime here in this state and then uses the car to cross the state line into Nevada, it's a Federal Offence. Plaintiffs Attorney in Nevada did not do his best to represent Rupp against the defendant in this case, because if he did, the lawyer would and should filed for a change of venue for Arbitration in California were the Fee of $ 75,400.37 could have been waived. The Arbitrator would not have faulted the Buyer or Seller for a Mistake made by someone that was paid not to make.

1   Please see letter from Attorney General Department of Justice State of California as Exhibit (4).

2

3                            **STATEMENT OF INTRODUCTION**

4

5   My name is Douglas J. Gould, I am a Plaintiff in this case because of the effect the illegal act(s) of

6   the defendant have had and still have upon my life. The defendant put a lien on the home I lived in

7   at the time and because of this lien, the home was Foreclosed which made me homeless. I was taken

8   away from a Hospital bed which was in the home, and medical acquitment. I have been forced to live

9   out of my 1964 van set up as a R.V. and share homeless services with a bank Robber I turned in to

10   local law enforcement Departments. I have had someone steal brake parts from my van which would

11   have gone un-notice if I did not keep up the maintenance of my Van. Just the last few days I have

12   been threaten to pay back a personal loan to a person who hangs with the homeless and he knows

13   very well I paid him back with a witness, and his family are Real Estate Agents here in Marin, which

14   has me wondering who is really making the threat of harm. I have to find places tp sleep that are not

15   safe at times, and when I do find someplace to sleep that is somewhat safe, I get chased away by the

16   Police and warned. I do not at most times during the week get the required sleep needed each night

17   because of my Birth disability which renders me in pain the proceeding days. I have worked all my

18   life in manual labor right up until the mid year of 2002. In just typing causes my hands and arms to

19   swell. The only source of income I have is from panhandling and $ 129.00 in food stamps. I am not

20   a lawyer but do have some past paralegal experience, and this case has and is taken a lot out me

21   physically. I witnessed the threat made to Frank Rupp the day the defendant called and demanded

22   he return the Fee and when they stated that he will not like what they will do to him if he did not

23   send it to them. Even the lawyer on the other phone said they were wrong. And he works for one of

24   the Three Highest Court Judges in Nevada. In summary, the defendant carried out their threat threw

25   the use of the Nevada Courts with the plan to tie it up in the legal system for years, and even sell the

26   company before they would have to answer for the crime. Both lawyer firms for Fatco and Rupp

27   mislead the Court in Nevada as if the matter was resolved.

28                              ( 5 )

1  I am not to well informed of the American Disabilities Act of 1990, and what the defendant has done

2  may have very well violated that Act which would give this Court Jurisdiction for review. Please

3  forgive me if I have not followed proper required Rules of this Court in submitting this Complaint

4  for reasons stated herein in relationship of my disability.

5

6                          **REQUEST FOR INJUNCTION**

7

8  Plaintiff Frank W. Rupp is attempting to purchase a home which has room for Plaintiff Douglas J.

9  Gould, but however, because of the lien on record with the Banking Institution placed by the

10  defendant, Frank Rupp cannot secure a personal loan from a bank to buy this home. Could this Court

11  please provide an Order to the Bank of America directing for the lien to be held in abeyance until

12  further notice from this Court. The dead line to buy this house is about one week from date. If

13  Granted, could the Court Clerk please draw up the Order and telephone Douglas Gould who can pick

14  up the Order and over night deliver it to Frank Rupp. Thank you.

15

16                          **DEMAND FOR RELIEF**

17

18  The Plaintiffs respectfully request the defendant to withdraw their Complaint from the Nevada

19  District Court and set a reasonable time to have an Table Conference for Settlement whereupon both

20  parties to this action can walk away satisfied, and or present all facts in this Complaint and its related

21  sister complaint against the State of Nevada in Trial and let the Jury decide the award. Amen

22

23

24

25  Plaintiff Frank W. Rupp____Frank W Rupp___4/10/08

26

27  Plaintiff Douglas J. Gould____Douglas J. Gould___4/10/08

28                              (6)

AO 440 (Rev. 03/08) Civil Summons

# UNITED STATES DISTRICT COURT
for the

Northern District of California

| | |
|---|---|
| FRANK W. RUPP, and DOUGLAS J. GOULD | ) |
| Plaintiff | ) |
| v. | )     Civil Action No. |
| FIRST AMERICAN TITLE COMPANY | ) |
| Defendant | ) |

**Summons in a Civil Action**

To:    CORPORATE HEADQUARTERS CLAIMS DEPT.

*(Defendant's name)*

A lawsuit has been filed against you.

       Within  20  days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, whose name and address are:

PLAINTIFFS.
Frank W. Rupp, 439 Butterfield Cathedral City, California 92234. Phone 760-208-4674
Douglas J. Gould, Ritter House Homeless Services, 16 Ritter Street P.O. 3517 San Rafael California 94901
                                 Phone 415-457-7372-ex446

If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

                                               Richard W. Wieking

                                               Name of clerk of court

Date: _____

                                               Deputy clerk's signature

*(Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States allowed 60 days by Rule 12(a)(3).)*

1

2

3

## CERTIFICATE OF SERVICE

4

5    I, *Stephen E Bonjulli*                        , state that I am over 18 years of age and I am not

6    a party to this action, do hereby swear that by United States Postal Service Priority Mail send

7    a True copy of Petition to File Complaint and Injunction and Summons to the forgoing address

8    on _4 / 11_ /08.

9    Corporate Headquarters Claims Department

10   The First American Corporation

11   First American Title

12   1 First American Way

13   Santa Ana, California, 92707

14

15   *Federal Court Rules of Civil Procedure for Service allow State Court Rules of Civil Procedure*

16   *for Service of Complaint and Summons upon Defendant.*

17

18   I, Plaintiff Douglas J. Gould hereby state that on _4 / 11_ /08, did Filed in Person

19   1, original and 2, copies of Petition to File Complaint and Injunction and

20   Summons to: Court Clerks Office, United States District Court, Northern

21   District of California 450 Golden Gate Ave, San Francisco California.

22

23

24   Douglas J. Gould _4 / 11_ /08

25

26

27

28

**The First American Title Case / close**

8/3/2003

| | File No. |
|---|---|
| Supplemental Page | 3805-908985 |
| HUD-1 Settlement Statement | |
| **First American Title Company** | Loan No. |
| **Final Statement** | 0002466 |
| | Settlement Date: |
| | 06/30/2003 |

Borrower Name/Address:
Virginia Rocha, 1860 ELLIS STREET #A, SAN FRANCISCO, CA 94115

Seller Name/Address:
FRANK W. RUPP, 4959 Talbot Lane #123, Reno, NV 89509

| Section L. Settlement Charges continued | Paid From Borrower's Funds at Settlement | Paid From Seller's Funds at Settlement |
|---|---|---|
| 1108.  Supplemental Summary | | |
| a) Eagle Owners Policy | | |
| b) ALTA Extended Loan Policy 1992 | | |
| c) ALTA Extended Loan Policy 1992 | | |
| 1315.  Supplemental Summary | 200.00 | |
| 1316) July to Amancio Ergina village | | |
| 1317) Transfer Fee to | | 200.00 |

| Section K. Summary of Seller's Transaction continued | | |
|---|---|---|
| 400. Gross Amount Due To Seller | | |
| 500. Reductions In Amount Due to Seller | | |
| 504.  Supplemental Summary | 71,530.65 | |
| a) Principal Balance  to First Republic Bank | | 70,815.61 |
| Interest on Payoff Loan 06/24/03 to 07/01/03 @$10.061400/day | | 80.65 |
| Statement/Forwarding Fee | | 30.00 |
| Reconveyance Fee | | 45.00 |
| Interest thru 6/24/03 | | 544.39 |
| Fax Fee | | 15.00 |

| The following Section is restated from the Settlement Statement Page 1 | | |
|---|---|---|
| 300. Cash At Settlement From/To Borrower | 600. Cash At Settlement To/From Seller | |
| 301. Gross amount due from Borrower (line 120) | 601. Gross Amount due to Seller (line 420) | 344,515.64 |
| 302. Less amounts paid by/for Borrower (line 220) | 601. Less reductions in amounts due to Seller (line 520) | 173,957.80 |
| 303. | 603. Cash (X To) ( From) Seller | 170,557.84 |

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and distributions made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.



EXHIBIT 1



| Home | Check License Status | Request for Assistance | Contact Us |

**CALIFORNIA DEPARTMENT OF INSURANCE**

| CONSUMERS | AGENTS & BROKERS | INSURERS | FRAUD | NEWS | ABOUT US |

site tools

-Enter Search Term- ►

Consumers Overview / Information Guides / Residential Series / **Title Insurance**

**Consumers Overview**

Buying Insurance

Health Related Insurance Information

Licensee Information

Studies and Reports

Legal Information

Information Guides
  - Automobile Series
  - Life Series
  - Business Series
  - Residential Series
  - Health Series
  - Senior Series
  - Other Topics

Health Issues

Seniors Issues

Market Conduct Exam Reports

Public Programs

Talk to Us

**Quick Links**

-For Consumers- ▲▼

## CONSUMERS: TITLE INSURANCE

(Revised  January 2006)

**Table of Contents**

Introduction

What is Title Insurance?

How is Title Insurance Different From Homeowner's Insurance?

Save Money By Comparing Rates

Discounts

Choice of Title Insurer

Who Does Title Insurance Protect?

What Does Title Insurance Cover?

Endorsement Options

Who Should Purchase Title Insurance?

How Much Title Insurance Will I Need?

Who Pays the Premium For the Title Policy?

How is the Premium Determined and When is it Paid?

What is Escrow?

Terms for Title Insurance

Important Tips

Final Thoughts

Other Resources

**Back to Top**

**Introduction**

The decision to purchase a home (or other real property) is probably the largest and most important financial decision you will make. You and your lender will want to make sure that title to the property is indeed yours and that no one will have liens, claims, or encumbrances on your property. Title insurance guarantees against losses from any defects in title that may exist in the public records at the time you purchase that property, and certain other risks described in the title insurance policy. Possible title defects include:

- Errors or omissions in deeds
- Mistakes in examining records
- Forgery
- Undisclosed heirs
- Missing heirs
- Liens for unpaid taxes
- Liens by contractors

Before issuing a title insurance policy, title companies check for defects in your title by examining public records

**Exhibit 2**

including deeds, mortgages, wills, divorce decrees, court judgments, tax records, liens, encumbrances, and maps. The title search determines who owns the property, what outstanding debts are against it, and the condition of the title. Title companies also handle property closings and hold earnest money in a trust account, also known as an escrow account, until the purchase is complete.

**Back to Top**

**What is Title Insurance?**

Title insurance is a contractual obligation that protects against losses that occur when title to a property is not free and clear of defects (e.g. liens, encumbrances and defects that were unknown when the title policy was issued). The terms of the policy define what risks are covered and what risks are excluded from coverage. The title insurer will reimburse you for losses that are covered, up to the face amount of the policy, and any related legal expenses. This protection is effective as of the issue date of the policy and covers defects arising prior to your ownership. Title companies issue policies on all types of real and personal property. Two types of title insurance policies for real property are common: a lender's policy and an owner's policy. (See Terms for Title Insurance).

**How is Title Insurance Different from Homeowner's Insurance?**

Title insurance protects against losses due to defects in title. Before issuing a title insurance policy, title companies search and examine public records and, in certain circumstances, survey the property to identify liens, claims or encumbrances on the property, and alert you to possible title defects. The premium cost is a one-time fee payable at the time of escrow closing. In contrast, homeowner's insurance insures your house and contents and may provide coverage for losses due to fire or lightning, theft, vandalism, and personal liability claims against the policyholder. Homeowner's premiums are often billed monthly, quarterly or annually and installment payment options are often available.

**Save Money by Comparing Rates**

Under California law, every title insurer, underwritten title company (agent for one or more title insurance companies), and controlled escrow company must file its schedule of rates, forms, and rate modifications with the Insurance Commissioner at least 30 days before the rates become effective. Since each company's loss experience and expenses differ, the rates will differ as well, so you can save money by comparing rates.

Competing title insurers and underwritten title companies offer different costs or services for title insurance. To assist you in comparing rates, the California Department of Insurance (CDI) is pleased to provide a survey of title fees and escrow fees from title insurance companies licensed to do business in the State of California. The survey is available online on the CDI web site at www.insurance.ca.gov. CDI provides homebuyers with pricing information for an owner's policy and a lender's policy. For those refinancing, CDI provides pricing information for a lender's policy based on the new transaction amount. You may choose one company for escrow services and another for title insurance.

This survey should be used as you shop for title insurance. Be sure that any title company you select meets your standards and those of your lender. Ultimately, the choice of which title insurance company to select is yours, so be sure to contact more than one title insurer or underwritten title company to compare costs and services. Check to see if you qualify for any discounts.

**Back to Top**

**Discounts**

Title insurance companies may offer discounts for title insurance and escrow, such as for first-time buyers, senior citizens, certain professions, a "short-term rate" for a property that has been resold within the last five years, and a subdivision bulk rate for homes being purchased in a new subdivision. Title companies may also offer a discount when both a lender's policy and an owner's policy are purchased concurrently from the same company. Not all companies offer all discounts. Discounts generally range from 5% to 30%. The availability of discounts, the amount of the discounts and the applicability of the discounts may vary by company. Be sure to ask the title or escrow officer what discounts are available. (See Terms for Title Insurance for Title Discount Definitions).

**Choice of Title Insurer**

The choice of which title insurer to use belongs to you. Federal law, the Real Estate Settlement Procedures Act (RESPA) of 1974 (Public Law 93-533), prohibits the seller from requiring you to purchase title insurance from any particular company.

Please visit the U.S. Department of Housing and Urban Development (HUD) Internet site for additional information on RESPA and title insurance.

**Who Does Title Insurance Protect?**

Title insurance protects you and your lender if someone challenges the title to your property. This may be in the form of an alleged title defect, which was unknown to you at the time you purchased the property, but came to light at some future date during your ownership of the property. A title insurance policy contains provisions for the payment of losses which result from a covered claim. The title insurance policy also covers legal fees in defense of a claim against your property. Coverage can benefit the homeowner or the bank or mortgage company (lender).

**What Does Title Insurance Cover?**

Two types of title insurance policies are available to owners of real property in California: California Land Title Association (CLTA) standard coverage policies and American Land Title Association (ALTA) policies.

A CLTA policy insures primarily against defects in title which are discoverable through an examination of the public record. This includes defects in title or recorded liens or encumbrances, such as unpaid taxes or assessments, and defects due to lack of access to an open street. A CLTA policy also covers a limited number of risks that are not discoverable through a search of the public records.

The ALTA policy provides greater coverage than the CLTA policy. Generally, the ALTA policy provides the same coverage as the CLTA policy, but also insures against defects, liens, encumbrances, easements, and encroachments and conflicts in boundary lines that are not reflected in the public records. Since an ALTA policy covers many "off-record" defects in title, the insurer will typically survey the property to be insured.

Since title insurance is required by your lender, the lender will specify the type of policy required.

**Back to Top**

**Endorsement Options**

You may also purchase, at an additional cost, optional endorsements to cover risks that are not included in the standard CLTA or ALTA title insurance policies. Endorsements are available to provide insurance against environmental protection liens, enforcement of covenants, conditions and restrictions, damage due to water and mineral development, and accuracy of boundaries. Be sure to discuss available optional endorsements with your title insurer or escrow officer.

**Who Should Purchase Title Insurance?**

Lenders require title insurance as a condition for your loan. Two types of policies are available: an owner's policy and a lender's policy. A lender's policy insures that the lender's security interest in the property has priority over claims that others may have in your property. A lender's policy does not protect you. Similarly, the prior owner's policy does not protect you. If you want to protect yourself from claims by others against your new home, you will need an owner's policy. An owner's policy insures the buyer for as long as he or she owns the property. This protection is limited to the value of the property. It is usually less expensive to purchase a lender's policy and owner's policy at the same time from the same title insurer. Contact your title insurer for additional information.

**How Much Title Insurance Will I Need?**

The homebuyer should insure the full purchase price of the property; the lender only requires title insurance to cover the amount of your loan.

**Back to Top**

**Who Pays the Premium for the Title Policy?**

In California, settlement practices vary from locality to locality. The party that pays the title premium is a matter of local custom and practice and not set by law. Depending upon the region, the premium for a title insurance policy can be paid by the buyer or the seller or split between both parties. In Southern California, the seller customarily pays the premium for title insurance. In Northern California, the buyer customarily pays the premium for title insurance, or occasionally the premium is split between buyer and seller. In almost every county, the buyer pays the lender's policy premium. The parties are free to negotiate a different allocation of fees. Your escrow officer can advise you as to who normally pays the premium in your area.

**How is the Premium Determined and When is it Paid?**

Title insurance premiums are based on the dollar amount of coverage provided. Every title insurance company is required to file its schedule of rates, forms, and rate modifications with the Insurance Commissioner at least 30 days before the rates can be used. These filings are available for public viewing in CDI's public viewing rooms in San Francisco and Los Angeles, with prior arrangements.

Premiums are paid once at the close of escrow. There are no continuing premiums like other types of insurance.

**What is Escrow?**

Escrow is a service which provides the buyer and seller with protection in the handling of funds and documents in the property transaction. Escrow enables the buyer and seller to transact business with each other through a neutral party. The "escrow holder" typically receives purchase funds from the buyer for deposit in an escrow account, prepares the deed or other documents, prorates taxes, interest, and insurance according to the escrow instructions, secures release of any contingencies imposed in the escrow, records deeds as instructed, requests issuance of the title insurance policy, prepares final accounting statements for the parties, disburses funds as authorized by the escrow instructions, and closes escrow when all of the escrow instructions of buyer and seller have been carried out.

The escrow process is handled differently in Northern and Southern California. In Northern California, title insurance companies tend to handle all title and escrow services in the same transaction. In Southern California, the title and escrow transactions are separate with escrow being provided by banks, escrow companies, or title companies. Practices will vary from county to county, so be sure you understand the dynamics of your individual transaction. (See Terms of Title Insurance for a description of Escrow Sale or Loan Fees.)

**Back to Top**

**Terms for Title Insurance**

**Escrow Sale Fee**

Escrow sales fee is the fee paid for the escrow process in a home purchase. It is not applicable to refinancing a home.

**Escrow Loan Fee**

It is a fee tied to the loan fee for a sale or purchase of a home. Some escrow companies require this fee. For a refinance, it is the fee paid for the escrow of a refinance transaction.

**Title Homeowner's Fee**

It is a fee paid for the owner's title insurance policy that protects the buyer of the home; not applicable in a refinance.

**Title Lenders Fee**

This is the fee charged for a lender's title insurance policy that protects the lender's security interest in the property.

**Lender's Policy**

When you refinance your home or take out a new mortgage, the lender seeks protection for its investment by requiring the purchase of a lender's title insurance policy to protect against losses resulting from claims made by others against your new home.

**Owner's Policy**

Since a lender's policy does not protect your financial interests, an owner's title insurance policy is worth serious consideration. If someone has a claim against the title to your new home and you are not insured, the result could be financial disaster. Many insurers offer discounts when both the lender and owner policies are purchased at the same time.

**Title Discount Definitions**

**Concurrent Rate Discount for Lender's and Owner's Policy**

Title only - a discount may be applicable when purchasing a lender's policy and owner's policy from the same title company.

**First Time Homebuyer's Discount**

Title and Escrow - usually relates to a one-to-four family residential property.

**Professional Discount**

Title and Escrow - title companies may offer this discount to professionals such as lawyers, engineers or teachers.

**Senior Citizen Discount**

Title and Escrow - a discount to buyers age 55 or older. Please visit the U.S. Housing and Urban Development Web site for additional information on RESPA and title insurance.

**Short Term Rate**

Title only - relates to the purchase of a new title insurance policy on a property that has been sold or insured within the last two to five years.

**Subdivision Bulk Rate Discount**

Title and Escrow - relates to the purchase of a new home sold by a developer or contractor selling multiple homes in a subdivision and using the same title and escrow company.

**Back to Top**

**Important Tips**

- Be sure to check to see that the title policy amount is correct.
- Check to see that the effective date given on the policy matches the actual closing date of the escrow.
- Verify that the policy describes all of the property and all of the interests being acquired.
- Discounts may be available for first time buyers and for others with special circumstances. Always ask your broker, lender or title insurer about available discounts.
- Concurrent rates may be available if the insurer is providing both a homeowner's and a lender's title insurance policy in the same transaction.
- Discount rates may be available in bulk rates for new subdivisions. After reviewing available discounts, always inform the broker or lender about discounts that may apply to you.
- Refinancing discounts and short-term financing rates may be available. Discuss discounts with your escrow or title officer.

**Final Thoughts**

If you suspect that a title insurance company is offering unlawful rebates or commissions, you can report this suspected activity to the California Department of Insurance (CDI). An unlawful rebate occurs when a lender or real estate broker or homebuilder receives free services, property, or money in exchange for steering buisiness to a title company. Such rebates act to inflate title insurance premium rates for all consumers. It is also unlawful if a title insurer, underwritten title company, or a controlled escrow company offers you a fee or charge that is less than the currently effective schedule for fees and charges filed with the CDI. The filed schedule is used as a basis for comparison between companies. If a title insurer offers a rebate from the scheduled fees and charges, it results in a discriminatory practice, which is unfair to all consumers. Like rebating, it is unlawful to pay a commission indirectly or directly to any person as a means of generating a referral or actual placement of title insurance. If either of these activities involves an escrow transaction, where a title insurance company is not handling the escrow function, you can report this activity to the Department of Real Estate.

If you have a question, problem, or dispute with a title insurance company, contact the CDI for assistance.

Please visit the Department of Insurance Web site at www.insurance.ca.gov for a comparison of title fees and escrow fees from title insurance companies licensed to do business in the State of California.

**Back to Top**

**Other Resources**

**California Department of Real Estate**

2201 Broadway

Sacramento, CA 95818-2500

(916) 227-0864 (Consumer Help)

(916) 227-0931 (Licensing)

Web site: www.dre.ca.gov

Contact regarding complaints against real estate agents

**California Department of Corporations**

1515 K Street, Suite 200

Sacramento, CA 95814-4052

(916) 445-7205

Web site: www.corp.ca.gov

Contact regarding complaints against independent escrow

companies only

(Escrow companies owned by a title company are controlled

escrow companies regulated by the California Department

of Insurance.)

**California Contractors State License Board**

9821 Business Park Drive

Sacramento, CA 95827

(800) 321-2752

Web site: www.cslb.ca.gov

Contact for complaints against homebuilder/contractors

**California Land Title Association**

1110 K Street, Suite 100

Sacramento, CA 9581-3905

(916) 444-2647

Web site: www.clta.org

Contact for consumer information regarding title and various real
estate topics

**Office of the Comptroller of the Currency**

Customer Assistance Group

1301 McKinney Street, Suite 3450

Houston, TX 77010

(800) 613-6743

Web site: www.occ.treas.gov

Contact for consumer complaints regarding national banks

**Office of Thrift Supervision**

1700 G Street, NW

Washington, DC 20552

(800) 842-6929

**Consumer Affairs Regional office (California)**

P.O. Box 7165, San Francisco, CA 94120

(650) 746-7098

Web site: www.ots.treas.gov

Contact for consumer complaints regarding thrift institutions/savings and loan

**U.S. Department of Housing and Urban Development**

Web site: www.hud.gov

Contact for homebuyer information regarding settlement services

**Back to Top**

© 2008 California Department of Insurance | Privacy Policy  ADA Compliance  Site Map  Free Document Readers



**CALIFORNIA**
**ASSOCIATION**
**OF REALTORS®**

# CALIFORNIA
## RESIDENTIAL PURCHASE AGREEMENT
## AND JOINT ESCROW INSTRUCTIONS
For Use With Single Family Residential Property — Attached or Detached
(C.A.R. Form RPA-CA, Revised 10/02)

Date **May 5, 2003** , at _____ , **San Francisco** , California.

**1. OFFER:**
   **A.** THIS IS AN OFFER FROM **Virginia Rocha** ("Buyer").
   **B.** THE REAL PROPERTY TO BE ACQUIRED is described as **1860A Ellis Street, San Francisco, CA   94115** , Assessor's Parcel No. _____ , situated in **San Francisco** , County of **San Francisco** , California, ("Property").
   **C.** THE PURCHASE PRICE offered is **Three Hundred Forty-Four Thousand Five Hundred** Dollars $ **344,500.00**
   **D.** CLOSE OF ESCROW shall occur on **June 27, 2003** (date) (or ☒ ____ Days After Acceptance).

**2. FINANCE TERMS:** Obtaining of the loans below is a contingency of this Agreement unless: (i) either 2K or 2L is checked below; or (ii) otherwise agreed in writing. Buyer shall act diligently and in good faith to obtain the designated loans. Obtaining deposit, down payment and closing costs is not a contingency. Buyer represents that funds will be good when deposited with Escrow Holder.
   **A.** INITIAL DEPOSIT: Buyer has given a deposit in the amount of .............................. $ **10,335.00**
      to the agent submitting the offer (or to ☒ ____ ), by personal check
      (or ☒ ____ ), made payable to **Old Republic Title**
      which shall be held uncashed until Acceptance and then deposited within 3 business days after Acceptance
      (or ☒ ____ ), with
      Escrow Holder, (or ☒ into Broker's trust account).
   **B.** INCREASED DEPOSIT: Buyer shall deposit with Escrow Holder an increased deposit in the amount of ..... $ ____
      within ____ Days After Acceptance, or ☐ ____
   **C.** FIRST LOAN IN THE AMOUNT OF ................................................................. $ **257,275.00**
      (1) NEW First Deed of Trust in favor of lender, encumbering the Property, securing a note payable at maximum
         interest of **6.000** % fixed rate, or ____ % initial adjustable rate with a maximum interest rate
         of ____ %, balance due in **30** years, amortized over **30** years. Buyer shall
         pay loan fees/points not to exceed **one point** (These terms apply whether the designated loan
         is conventional, FHA or VA.)
      (2) ☒ FHA ☐ VA: (The following terms only apply to the FHA or VA loan that is checked.)
         Seller shall pay ____ % discount points. Seller shall pay other fees not allowed to be paid by Buyer,
         ☒ not to exceed $ ____ . Seller shall pay the cost of lender required Repairs (including
         those for wood destroying pest) not otherwise provided for in this Agreement, ☒ not to exceed
         $ ____ . (Actual loan amount may increase if mortgage insurance premiums, funding
         fees or closing costs are financed.)
   **D.** ADDITIONAL FINANCING TERMS: ☒ Seller financing, (C.A.R. Form SFA); ☒ secondary financing, ............. $ **70,000.00**
      (C.A.R. Form PAA, paragraph 4A); ☒ assumed financing (C.A.R. Form PAA, paragraph 4B)
      **City Second Loan Program   (Mayor's Office has the Right of first refusal)**
   **E.** BALANCE OF PURCHASE PRICE (not including costs of obtaining loans and other closing costs) in the amount of .. $ **6,890.00**
      to be deposited with Escrow Holder within sufficient time to close escrow.
   **F.** PURCHASE PRICE (TOTAL): ..................................................................... $ **344,500.00**
   **G.** LOAN APPLICATIONS: Within 7 (or ☐ ____ ) Days After Acceptance, Buyer shall provide Seller a letter from lender or mortgage loan broker stating that, based on a review of Buyer's written application and credit report, Buyer is prequalified or preapproved for the NEW loan specified in 2C above.
   **H.** VERIFICATION OF DOWN PAYMENT AND CLOSING COSTS: Buyer (or Buyer's lender or loan broker pursuant to 2G) shall, within 7 (or ☐ ____ ) Days After Acceptance, provide Seller written verification of Buyer's down payment and closing costs.
   **I.** LOAN CONTINGENCY REMOVAL: (i) Within 17 (or ☐ ____ ) Days After Acceptance, Buyer shall, as specified in paragraph 14, remove the loan contingency or cancel this Agreement; OR (ii) (if checked) ☐ the loan contingency shall remain in effect until the designated loans are funded.
   **J.** APPRAISAL CONTINGENCY AND REMOVAL: This Agreement is (OR, if checked, ☐ is NOT) contingent upon the Property appraising at no less than the specified purchase price. Buyer shall, as specified in paragraph 14, remove the appraisal contingency or cancel this Agreement when the loan contingency is removed (or, if checked, ☐ within 17 (or ☐ ____ ) Days After Acceptance).
   **K.** ☐ NO LOAN CONTINGENCY (if checked): Obtaining any loan in paragraphs 2C, 2D or elsewhere in this Agreement is NOT a contingency of this Agreement. If Buyer does not obtain the loan and as a result Buyer does not purchase the Property, Seller may be entitled to Buyer's deposit or other legal remedies.
   **L.** ☐ ALL CASH OFFER (if checked): No loan is needed to purchase the Property. Buyer shall, within 7 (or ☐ ____ ) Days After Acceptance, provide Seller written verification of sufficient funds to close this transaction.

**3. CLOSING AND OCCUPANCY:**
   **A.** Buyer intends (or ☐ does not intend) to occupy the Property as Buyer's primary residence.
   **B.** Seller-occupied or vacant property: Occupancy shall be delivered to Buyer at **1:00** ☐ AM ☒ PM, ☒ on the date of Close Of Escrow; ☐ on ____ ; or ☒ no later than **30** Days After Close Of Escrow. (C.A.R. Form PAA, paragraph 2) If transfer of title and occupancy do not occur at the same time, Buyer and Seller are advised to: (i) enter into a written occupancy agreement; and (ii) consult with their

EXHIBIT **3**

The unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. Copyright © 1991-2002, CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.

Buyer's Initials ( ____ )( ____ )
Seller's Initials ( ____ )( ____ )

Reviewed by ____ Date ____

CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 1 OF 8)

Agent: **Agnes Chan Low**          Phone: **(415)7310303**          Fax: **(415)7593616**
Broker: **Land & Prop. Inv./Hometrend**   **2121-19th Ave.,** , **San Francisco          CA 94116**          Prepared using WINForms® software

**FR 036**

Property Address: _1860A Ellis Street, San Francisco, CA 94115_                    Date: _May 6, 2003_

    C. **Tenant-occupied property: (i)** Property shall be vacant at least 5 (or ☐ _____ ) Days Prior to Close Of Escrow, unless otherwise agreed in writing. Note to Seller: If you are unable to deliver Property vacant in accordance with rent control and other applicable Law, you may be in breach of this Agreement.

    **OR (ii) (if checked)** ☐ Tenant to remain in possession. The attached addendum is incorporated into this Agreement (C.A.R. Form PAA, paragraph 3.);

    **OR (iii) (if checked)** ☐ This Agreement is contingent upon Buyer and Seller entering into a written agreement regarding occupancy of the Property within the time specified in paragraph 14. If no written agreement is reached within this time, either Buyer or Seller may cancel this Agreement in writing.

    D. At Close Of Escrow, Seller assigns to Buyer any assignable warranty rights for items included in the sale and shall provide any available Copies of such warranties. Brokers cannot and will not determine the assignability of any warranties.

    E. At Close Of Escrow, unless otherwise agreed in writing, Seller shall provide keys and/or means to operate all locks, mailboxes, security systems, alarms and garage door openers. If Property is a condominium or located in a common interest subdivision, Buyer may be required to pay a deposit to the Homeowners' Association ("HOA") to obtain keys to accessible HOA facilities.

**4. ALLOCATION OF COSTS (If checked):** Unless otherwise specified here, this paragraph only determines who is to pay for the report, inspection, test or service mentioned. If not specified here or elsewhere in this Agreement, the determination of who is to pay for any work recommended or identified by any such report, inspection, test or service shall be by the method specified in paragraph 14.

    A. **WOOD DESTROYING PEST INSPECTION:**
      (1) ☐ Buyer ☐ Seller shall pay for an inspection and report for wood destroying pests and organisms ("Report") which shall be prepared by _____ , a registered structural pest control company. The Report shall cover the accessible areas of the main building and attached structures and, if checked: ☐ detached garages and carports, ☐ detached decks, ☐ the following other structures or areas _____ . The Report shall not include roof coverings. If Property is a condominium or located in a common interest subdivision, the Report shall include only the separate interest and any exclusive-use areas being transferred and shall not include common areas, unless otherwise agreed. Water tests of shower pans on upper level units may not be performed without consent of the owners of property below the shower.
      **OR (2)** ☐ (If checked) The attached addendum (C.A.R. Form WPA) regarding wood destroying pest inspection and allocation of cost is incorporated into this Agreement.

    B. **OTHER INSPECTIONS AND REPORTS:**
      (1) ☐ Buyer ☐ Seller shall pay to have septic or private sewage disposal systems inspected _____
      (2) ☐ Buyer ☐ Seller shall pay to have domestic wells tested for water potability and productivity _____
      (3) ☐ Buyer ☒ Seller shall pay for a natural hazard zone disclosure report prepared by _at Seller's choice_
      (4) ☐ Buyer ☐ Seller shall pay for the following inspection or report _____
      (5) ☐ Buyer ☐ Seller shall pay for the following inspection or report _____

    C. **GOVERNMENT REQUIREMENTS AND RETROFIT:**
      (1) ☐ Buyer ☒ Seller shall pay for smoke detector installation and/or water heater bracing, if required by Law. Prior to Close Of Escrow, Seller shall provide Buyer a written statement of compliance in accordance with state and local Law, unless exempt.
      (2) ☐ Buyer ☒ Seller shall pay the cost of compliance with any other minimum mandatory government retrofit standards, inspections and reports if required as a condition of closing escrow under any Law. _including energy & water conservation complia_ .

    D. **ESCROW AND TITLE:**
      (1) ☒ Buyer ☐ Seller shall pay escrow fee _____
        Escrow Holder shall be _____
      (2) ☒ Buyer ☐ Seller shall pay for owner's title insurance policy specified in paragraph 12 _____
        Owner's title policy to be issued by _Old Republic Title_
        (Buyer shall pay for any title insurance policy insuring Buyer's lender, unless otherwise agreed in writing.)

    E. **OTHER COSTS**
      (1) ☐ Buyer ☒ Seller shall pay County transfer tax or transfer fee _____
      (2) ☐ Buyer ☒ Seller shall pay City transfer tax or transfer fee _____      FR 037
      (3) ☐ Buyer ☒ Seller shall pay HOA transfer fee _____
      (4) ☐ Buyer ☒ Seller shall pay HOA document preparation fees _____
      (5) ☐ Buyer ☒ Seller shall pay the cost, not to exceed $ _450.00_ , of a one-year home warranty plan, issued by _____ , with the following optional coverage: _____
      (6) ☐ Buyer ☒ Seller shall pay for _3R report and underground storage tank inspection report or evidence_
      (7) ☐ Buyer ☐ Seller shall pay for _____

**5. STATUTORY DISCLOSURES (INCLUDING LEAD-BASED PAINT HAZARD DISCLOSURES) AND CANCELLATION RIGHTS:**
    A. (1) Seller shall, within the time specified in paragraph 14, deliver to Buyer, if required by Law: (i) Federal Lead-Based Paint Disclosures and pamphlet ("Lead Disclosures"); and (ii) disclosures or notices required by sections 1102 et. seq. and 1103 et. seq. of the California Civil Code ("Statutory Disclosures"). Statutory Disclosures include, but are not limited to, a Real Estate Transfer Disclosure Statement ("TDS"), Natural Hazard Disclosure Statement ("NHD"), notice or actual knowledge of release of illegal controlled substance, notice of special tax and/or assessments (or, if allowed, substantially equivalent notice regarding the Mello-Roos Community Facilities Act and Improvement Bond Act of 1915) and, if Seller has actual knowledge, an industrial use and military ordinance location disclosure (C.A.R. Form SSD).
      (2) Buyer shall, within the time specified in paragraph 14, return Signed Copies of the Statutory and Lead Disclosures to Seller.
      (3) In the event Seller, prior to Close Of Escrow, becomes aware of adverse conditions materially affecting the Property, or any material inaccuracy in disclosures, information or representations previously provided to Buyer of which Buyer is otherwise unaware, Seller shall promptly provide a subsequent or amended disclosure or notice, in writing, covering those items. However, a subsequent or amended disclosure shall not be required for conditions and material inaccuracies disclosed in reports ordered and paid for by Buyer.

Buyer's Initials ( _____ ) ( _____ )
Seller's Initials ( _____ ) ( _____ )

Reviewed by _____ Date _____

Copyright © 1991-2002, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
RPA-CA REVISED 10/02 (PAGE 2 OF 8)

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 2 OF 8)**

T7846509.ZFX

Property Address: _18601 Ellis Street, San Francisco, CA  94115_ ............... Date:_May 5, 2003_

(4) If any disclosure or notice specified in 5A(1), or subsequent or amended disclosure or notice is delivered to Buyer after the offer is Signed, Buyer shall have the right to cancel this Agreement within 3 Days After delivery in person, or 5 Days After delivery by deposit in the mail, by giving written notice of cancellation to Seller or Seller's agent. (Lead Disclosures sent by mail must be sent certified mail or better.)
(5) Note to Buyer and Seller: Waiver of Statutory and Lead Disclosures is prohibited by Law.
B. **NATURAL AND ENVIRONMENTAL HAZARDS:** Within the time specified in paragraph 14, Seller shall, if required by Law: (i) deliver to Buyer earthquake guides (and questionnaire) and environmental hazards booklet; (ii) even if exempt from the obligation to provide a NHD, disclose if the Property is located in a Special Flood Hazard Area; Potential Flooding (Inundation) Area; Very High Fire Hazard Zone; State Fire Responsibility Area; Earthquake Fault Zone; Seismic Hazard Zone; and (iii) disclose any other zone as required by Law and provide any other information required for those zones.
C. **DATA BASE DISCLOSURE: NOTICE:** The California Department of Justice, sheriff's departments, police departments serving jurisdictions of 200,000 or more and many other local law enforcement authorities maintain for public access a data base of the locations of persons required to register pursuant to paragraph (1) of subdivision (a) of Section 290.4 of the Penal Code. The data base is updated on a quarterly basis and a source of information about the presence of these individuals in any neighborhood. The Department of Justice also maintains a Sex Offender Identification Line through which inquiries about individuals may be made. This is a "900" telephone service. Callers must have specific information about individuals they are checking. Information regarding neighborhoods is not available through the "900" telephone service.
6. **CONDOMINIUM/PLANNED UNIT DEVELOPMENT DISCLOSURES:**
   A. SELLER HAS: 7 (or ☐ _____ ) Days After Acceptance to disclose to Buyer whether the Property is a condominium, or is located in a planned unit development or other common interest subdivision.
   B. If the Property is a condominium or is located in a planned unit development or other common interest subdivision, Seller has 3 (or ☐ _____ ) Days After Acceptance to request from the HOA (C.A.R. Form HOA): (i) Copies of any documents required by Law; (ii) disclosure of any pending or anticipated claim or litigation by or against the HOA; (iii) a statement containing the location and number of designated parking and storage spaces; (iv) Copies of the most recent 12 months of HOA minutes for regular and special meetings; and (v) the names and contact information of all HOAs governing the Property (collectively, "CI Disclosures"). Seller shall itemize and deliver to Buyer all CI Disclosures received from the HOA and any CI Disclosures in Seller's possession. Buyer's approval of CI Disclosures is a contingency of this Agreement as specified in paragraph 14.
7. **CONDITIONS AFFECTING PROPERTY:**
   A. Unless otherwise agreed: (i) the Property is sold (a) in its PRESENT physical condition as of the date of Acceptance and (b) subject to Buyer's investigation rights; (ii) the Property, including pool, spa, landscaping and grounds, is to be maintained in substantially the same condition as on the date of Acceptance; and (iii) all debris and personal property not included in the sale shall be removed by Close Of Escrow.
   B. SELLER SHALL, within the time specified in paragraph 14, DISCLOSE KNOWN MATERIAL FACTS AND DEFECTS affecting the Property, including known insurance claims within the past five years, AND MAKE OTHER DISCLOSURES REQUIRED BY LAW.
   C. NOTE TO BUYER: You are strongly advised to conduct investigations of the entire Property in order to determine its present condition since Seller may not be aware of all defects affecting the Property or other factors that you consider important. Property improvements may not be built according to code, in compliance with current Law, or have had permits issued.
   D. NOTE TO SELLER: Buyer has the right to inspect the Property and, as specified in paragraph 14, based upon information discovered in those inspections: (i) cancel this Agreement; or (ii) request that you make Repairs or take other action.
8. **ITEMS INCLUDED AND EXCLUDED:**
   A. NOTE TO BUYER AND SELLER: Items listed as included or excluded in the MLS, flyers or marketing materials are not included in the purchase price or excluded from the sale unless specified in 8B or C.
   B. ITEMS INCLUDED IN SALE:
   (1) All EXISTING fixtures and fittings that are attached to the Property;
   (2) Existing electrical, mechanical, lighting, plumbing and heating fixtures, ceiling fans, fireplace inserts, gas logs and grates, solar systems, built-in appliances, window and door screens, awnings, shutters, window coverings, attached floor coverings, television antennas, satellite dishes, private integrated telephone systems, air coolers/conditioners, pool/spa equipment, garage door openers/remote controls, mailbox, in-ground landscaping, trees/shrubs, water softeners, water purifiers, security systems/alarms;
   (3) The following items: _refrigerator, washer and dryer, stove_  _MICROWAVE  UR_
   _____
   (4) Seller represents that all items included in the purchase price, unless otherwise specified, are owned by Seller.
   (5) All items included shall be transferred free of liens and without Seller warranty.
   C. ITEMS EXCLUDED FROM SALE: _____
9. **BUYER'S INVESTIGATION OF PROPERTY AND MATTERS AFFECTING PROPERTY:**
   A. Buyer's acceptance of the condition of, and any other matter affecting the Property, is a contingency of this Agreement as specified in this paragraph and paragraph 14. Within the time specified in paragraph 14, Buyer shall have the right, at Buyer's expense unless otherwise agreed, to conduct inspections, investigations, tests, surveys and other studies ("Buyer Investigations"), including, but not limited to, the right to: (i) inspect for lead-based paint and other lead-based paint hazards; (ii) inspect for wood destroying pests and organisms; (iii) review the registered sex offender database; (iv) confirm the insurability of Buyer and the Property; and (v) satisfy Buyer as to any matter specified in the attached Buyer's Inspection Advisory (C.A.R. Form BIA). Without Seller's prior written consent, Buyer shall neither make nor cause to be made: (i) invasive or destructive Buyer Investigations; or (ii) inspections by any governmental building or zoning inspector or government employee, unless required by Law.
   B. Buyer shall complete Buyer Investigations and, as specified in paragraph 14, remove the contingency or cancel this Agreement. Buyer shall give Seller, at no cost, complete Copies of all Buyer Investigation reports obtained by Buyer. Seller shall make the Property available for all Buyer Investigations. Seller shall have water, gas, electricity and all operable pilot lights on for Buyer's Investigations and through the date possession is made available to Buyer.

_____

FR 038

Copyright © 1991-2002, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
RPA-CA REVISED 10/02 (PAGE 3 OF 6)

| Buyer's Initials ( | ) ( | ) |
| Seller's Initials ( | ) ( | ) |
| Reviewed by | Date | |

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 3 OF 6)**

T7846509.ZFX

Property Address: 1860A Ellis Street, San Francisco, CA 94115    Date: May 5, 2003

**10. REPAIRS:** Repairs shall be completed prior to final verification of condition unless otherwise agreed in writing. Repairs to be performed at Seller's expense may be performed by Seller or through others, provided that the work complies with applicable Law, including governmental permit, inspection and approval requirements. Repairs shall be performed in a good, skillful manner with materials of quality and appearance comparable to existing materials. It is understood that exact restoration of appearance or cosmetic items following all Repairs may not be possible. Seller shall: (i) obtain receipts for Repairs performed by others; (ii) prepare a written statement indicating the Repairs performed by Seller and the date of such Repairs; and (iii) provide Copies of receipts and statements to Buyer prior to final verification of condition.

**11. BUYER INDEMNITY AND SELLER PROTECTION FOR ENTRY UPON PROPERTY:** Buyer shall: (i) keep the Property free and clear of liens; (ii) Repair all damage arising from Buyer Investigations; and (iii) indemnify and hold Seller harmless from all resulting liability, claims, demands, damages and costs. Buyer shall carry, or Buyer shall require anyone acting on Buyer's behalf to carry, policies of liability, workers' compensation and other applicable insurance, defending and protecting Seller from liability for any injuries to persons or property occurring during any Buyer Investigations and other work done on the Property at Buyer's direction prior to Close Of Escrow. Seller is advised that certain protections may be afforded Seller by recording a "Notice of Non-responsibility" (C.A.R. Form NNR) for Buyer Investigations and work done on the Property at Buyer's direction. Buyer's obligations under this paragraph shall survive the termination of this Agreement.

**12. TITLE AND VESTING:**

  **A.** Within the time specified in paragraph 14, Buyer shall be provided a current preliminary (title) report, which is only an offer by the title insurer to issue a policy of title insurance and may not contain every item affecting title. Buyer's review of the preliminary report and any other matters which may affect title are a contingency of this Agreement as specified in paragraph 14.

  **B.** Title is taken in its present condition subject to all encumbrances, easements, covenants, conditions, restrictions, rights and other matters, whether of record or not, as of the date of Acceptance except: (i) monetary liens of record unless Buyer is assuming those obligations or taking the Property subject to those obligations; and (ii) those matters which Seller has agreed to remove in writing.

  **C.** Within the time specified in paragraph 14, Seller has a duty to disclose to Buyer all matters known to Seller affecting title, whether of record or not.

  **D.** At Close Of Escrow, Buyer shall receive a grant deed conveying title (or, for stock cooperative or long-term lease, an assignment of stock certificate or of Seller's leasehold interest), including oil, mineral and water rights if currently owned by Seller. Title shall vest as designated in Buyer's supplemental escrow instructions. THE MANNER OF TAKING TITLE MAY HAVE SIGNIFICANT LEGAL AND TAX CONSEQUENCES. CONSULT AN APPROPRIATE PROFESSIONAL.

  **E.** Buyer shall receive a CLTA/ALTA Homeowner's Policy of Title Insurance. A title company, at Buyer's request, can provide information about the availability, desirability, coverage, and cost of various title insurance coverages and endorsements. If Buyer desires title coverage other than that required by this paragraph, Buyer shall instruct Escrow Holder in writing and pay any increase in cost.

**13. SALE OF BUYER'S PROPERTY:**

  **A.** This Agreement is NOT contingent upon the sale of any property owned by Buyer.

  **B.** ☐ (If checked): The attached addendum (C.A.R. Form COP) regarding the contingency for the sale of property owned by Buyer is incorporated into this Agreement.

**14. TIME PERIODS; REMOVAL OF CONTINGENCIES; CANCELLATION RIGHTS:** The following time periods may only be extended, altered, modified or changed by mutual written agreement. Any removal of contingencies or cancellation under this paragraph must be in writing (C.A.R. Form RRCR).

  **A. SELLER HAS: 7** (or ☐ _____ ) Days After Acceptance to deliver to Buyer all reports, disclosures and information for which Seller is responsible under paragraphs 4, 5A and B, 6A, 7B and 12.

  **B.** (1) **BUYER HAS: 17** (or ☐ _____ ) Days After Acceptance, unless otherwise agreed in writing, to:

    (i) complete all Buyer Investigations; approve all disclosures, reports and other applicable information, which Buyer receives from Seller; and approve all matters affecting the Property (including lead-based paint and lead-based paint hazards as well as other information specified in paragraph 5 and insurability of Buyer and the Property); and

    (ii) return to Seller Signed Copies of Statutory and Lead Disclosures delivered by Seller in accordance with paragraph 5A.

    (2) Within the time specified in 14B(1), Buyer may request that Seller make repairs or take any other action regarding the Property (C.A.R. Form RR). Seller has no obligation to agree to or respond to Buyer's requests.

    (3) By the end of the time specified in 14B(1) (or 2I for loan contingency or 2J for appraisal contingency), Buyer shall, in writing, remove the applicable contingency (C.A.R. Form RRCR) or cancel this Agreement. However, if the following inspections, reports or disclosures are not made within the time specified in 14A, then Buyer has 5 (or ☐ _____ ) Days after receipt of any such items, or the time specified in 14B(1), whichever is later, to remove the applicable contingency or cancel this Agreement in writing: (i) government-mandated inspections or reports required as a condition of closing; or (ii) Common Interest Disclosures pursuant to paragraph 6B.

  **C. CONTINUATION OF CONTINGENCY OR CONTRACTUAL OBLIGATION; SELLER RIGHT TO CANCEL:**

    (1) **Seller right to Cancel; Buyer Contingencies:** Seller, after first giving Buyer a Notice to Buyer to Perform (as specified below), may cancel this Agreement in writing and authorize return of Buyer's deposit if, by the time specified in this Agreement, Buyer does not remove in writing the applicable contingency or cancel this Agreement. Once all contingencies have been removed, failure of either Buyer or Seller to close escrow on time may be a breach of this Agreement.

    (2) **Continuation of Contingency:** Even after the expiration of the time specified in 14B(1), Buyer retains the right to make requests to Seller, remove in writing the applicable contingency or cancel this Agreement until Seller cancels pursuant to 14C(1). Once Seller receives Buyer's written removal of all contingencies, Seller may not cancel this Agreement pursuant to 14C(1).

    (3) **Seller right to Cancel; Buyer Contract Obligations:** Seller, after first giving Buyer a Notice to Buyer to Perform (as specified below), may cancel this Agreement in writing and authorize return of Buyer's deposit for any of the following reasons: (i) if Buyer fails to deposit funds as required by 2A or 2B; (ii) if the funds deposited pursuant to 2A or 2B are not good when deposited; (iii) if Buyer fails to provide a letter as required by 2G; (iv) if Buyer fails to provide verification as required by 2H or 2L; (v) if Seller reasonably disapproves of the verification provided by 2H or 2L; (vi) if Buyer fails to return Statutory and Lead Disclosures as required by paragraph 5A(2); or (vii) if Buyer fails to sign or initial a separate liquidated damage form for an increased deposit as required by paragraph 16. Seller is not required to give Buyer a Notice to Perform regarding Close of Escrow.

    (4) **Notice To Buyer To Perform:** The Notice to Buyer to Perform (C.A.R. Form NBP) shall: (i) be in writing; (ii) be signed by Seller; and (iii) give Buyer at least 24 (or ☐ _____ ) hours (or until the time specified in the applicable paragraph, whichever occurs last) to take the applicable action. A Notice to Buyer to Perform may not be given any earlier than 2 Days Prior to the expiration of the applicable time for Buyer to remove a contingency or cancel this Agreement or meet a 14C(3) obligation.

Copyright © 1991-2002, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
RPA-CA REVISED 10/02 (PAGE 4 OF 8)

Buyer's Initials ( _____ )( _____ )
Seller's Initials ( _____ )( _____ )
Reviewed by _____ Date _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 4 OF 8)**

FR 039

Property Address: 1860A Ellis Street, San Francisco, CA 94115                Date: May 5, 2003

**D. EFFECT OF BUYER'S REMOVAL OF CONTINGENCIES:** If Buyer removes, in writing, any contingency or cancellation rights, unless otherwise specified in a separate written agreement between Buyer and Seller, Buyer shall conclusively be deemed to have: (i) completed all Buyer investigations, and review of reports and other applicable information and disclosures pertaining to that contingency or cancellation right; (ii) elected to proceed with the transaction; and (iii) assumed all liability, responsibility and expense for Repairs or corrections pertaining to that contingency or cancellation right, or for inability to obtain financing.

**E. EFFECT OF CANCELLATION ON DEPOSITS:** If Buyer or Seller gives written notice of cancellation pursuant to rights duly exercised under the terms of this Agreement, Buyer and Seller agree to Sign mutual instructions to cancel the sale and escrow and release deposits, less fees and costs, to the party entitled to the funds. Fees and costs may be payable to service providers and vendors for services and products provided during escrow. Release of funds will require mutual Signed release instructions from Buyer and Seller, judicial decision or arbitration award. A party may be subject to a civil penalty of up to $1,000 for refusal to sign such instructions if no good faith dispute exists as to who is entitled to the deposited funds (Civil Code §1057.3).

**15. FINAL VERIFICATION OF CONDITION:** Buyer shall have the right to make a final inspection of the Property within 5 (or _____ ) Days Prior to Close Of Escrow, NOT AS A CONTINGENCY OF THE SALE, but solely to confirm: (i) the Property is maintained pursuant to paragraph 7A; (ii) Repairs have been completed as agreed; and (iii) Seller has complied with Seller's other obligations under this Agreement.

**16. LIQUIDATED DAMAGES:** If Buyer fails to complete this purchase because of Buyer's default, Seller shall retain, as liquidated damages, the deposit actually paid. If the Property is a dwelling with no more than four units, one of which Buyer intends to occupy, then the amount retained shall be no more than 3% of the purchase price. Any excess shall be returned to Buyer. Release of funds will require mutual, Signed release instructions from both Buyer and Seller, judicial decision or arbitration award. BUYER AND SELLER SHALL SIGN A SEPARATE LIQUIDATED DAMAGES PROVISION FOR ANY INCREASED DEPOSIT. (C.A.R. FORM RID)

Buyer's Initials _____ / _____    Seller's Initials _____ / _____

**17. DISPUTE RESOLUTION:**

**A. MEDIATION:** Buyer and Seller agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, before resorting to arbitration or court action. Paragraphs 17B(2) and (3) below apply whether or not the Arbitration provision is initialed. Mediation fees, if any, shall be divided equally among the parties involved. If, for any dispute or claim to which this paragraph applies, any party commences an action without first attempting to resolve the matter through mediation, or refuses to mediate after a request has been made, then that party shall not be entitled to recover attorney fees, even if they would otherwise be available to that party in any such action. THIS MEDIATION PROVISION APPLIES WHETHER OR NOT THE ARBITRATION PROVISION IS INITIALED.

**B. ARBITRATION OF DISPUTES: (1)** Buyer and Seller agree that any dispute or claim in Law or equity arising between them out of this Agreement or any resulting transaction, which is not settled through mediation, shall be decided by neutral, binding arbitration, including and subject to paragraphs 17B(2) and (3) below. The arbitrator shall be a retired judge or justice, or an attorney with at least 5 years of residential real estate Law experience, unless the parties mutually agree to a different arbitrator, who shall render an award in accordance with substantive California Law. The parties shall have the right to discovery in accordance with California Code of Civil Procedure §1283.05. In all other respects, the arbitration shall be conducted in accordance with Title 9 of Part III of the California Code of Civil Procedure. Judgment upon the award of the arbitrator(s) may be entered into any court having jurisdiction. Interpretation of this agreement to arbitrate shall be governed by the Federal Arbitration Act.

**(2) EXCLUSIONS FROM MEDIATION AND ARBITRATION:** The following matters are excluded from mediation and arbitration: (i) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in Civil Code §2985; (ii) an unlawful detainer action; (iii) the filing or enforcement of a mechanic's lien; and (iv) any matter that is within the jurisdiction of a probate, small claims or bankruptcy court. The filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies, shall not constitute a waiver of the mediation and arbitration provisions.

**(3) BROKERS:** Buyer and Seller agree to mediate and arbitrate disputes or claims involving either or both Brokers, consistent with 17 A and B, provided either or both Brokers shall have agreed to such mediation or arbitration prior to, or within a reasonable time after, the dispute or claim is presented to Brokers. Any election by either or both Brokers to participate in mediation or arbitration shall not result in Brokers being deemed parties to the Agreement.

**"NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY."**

**"WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION."**

Buyer's Initials _____ / _____    Seller's Initials _____ / _____

FR 040

Copyright © 1991-2002, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
RPA-CA REVISED 10/02 (PAGE 5 OF 8)

Buyers Initials ( _____ ) ( _____ )
Sellers Initials ( _____ ) ( _____ )
Reviewed by _____ Date _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 5 OF 8)**

T7846509.ZFX

Property Address: 1860A Ellis Street, San Francisco, CA 94115            Date: May 5, 2003

**18. PRORATIONS OF PROPERTY TAXES AND OTHER ITEMS:** Unless otherwise agreed in writing, the following items shall be PAID CURRENT and prorated between Buyer and Seller as of Close Of Escrow: real property taxes and assessments, interest, rents, HOA regular, special, and emergency dues and assessments imposed prior to Close Of Escrow, premiums on insurance assumed by Buyer, payments on bonds and assessments assumed by Buyer, and payments on Mello-Roos and other Special Assessment District bonds and assessments that are now a lien. The following items shall be assumed by Buyer WITHOUT CREDIT toward the purchase price: prorated payments on Mello-Roos and other Special Assessment District bonds and assessments and HOA special assessments that are now a lien but not yet due. Property will be reassessed upon change of ownership. Any supplemental tax bills shall be paid as follows: (i) for periods after Close Of Escrow, by Buyer; and (ii) for periods prior to Close Of Escrow, by Seller. **TAX BILLS ISSUED AFTER CLOSE OF ESCROW SHALL BE HANDLED DIRECTLY BETWEEN BUYER AND SELLER.** Prorations shall be made based on a 30-day month.

**19. WITHHOLDING TAXES:** Seller and Buyer agree to execute any instrument, affidavit, statement or instruction reasonably necessary to comply with federal (FIRPTA) and California withholding Law, if required (C.A.R. Forms AS and AB).

**20. MULTIPLE LISTING SERVICE ("MLS"):** Brokers are authorized to report to the MLS a pending sale and, upon Close Of Escrow, the terms of this transaction to be published and disseminated to persons and entities authorized to use the information on terms approved by the MLS.

**21. EQUAL HOUSING OPPORTUNITY:** The Property is sold in compliance with federal, state and local anti-discrimination Laws.

**22. ATTORNEY FEES:** In any action, proceeding, or arbitration between Buyer and Seller arising out of this Agreement, the prevailing Buyer or Seller shall be entitled to reasonable attorney fees and costs from the non-prevailing Buyer or Seller, except as provided in paragraph 17A.

**23. SELECTION OF SERVICE PROVIDERS:** If Brokers refer Buyer or Seller to persons, vendors, or service or product providers ("Providers"), Brokers do not guarantee the performance of any Providers. Buyer and Seller may select ANY Providers of their own choosing.

**24. TIME OF ESSENCE; ENTIRE CONTRACT; CHANGES:** Time is of the essence. All understandings between the parties are incorporated in this Agreement. Its terms are intended by the parties as a final, complete and exclusive expression of their Agreement with respect to its subject matter, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. Neither this Agreement nor any provision in it may be extended, amended, modified, altered or changed, except in writing Signed by Buyer and Seller.

**25. OTHER TERMS AND CONDITIONS, including attached supplements:**
    A. ☑ Buyer's Inspection Advisory (C.A.R. Form BIA-11)
    B. ☐ Purchase Agreement Addendum (C.A.R. Form PAA paragraph numbers: _____ )
    C. _____

**DEFINITIONS:** As used in this Agreement:
A. **"Acceptance"** means the time the offer or final counter offer is accepted in writing by a party and is delivered to and personally received by the other party or that party's authorized agent in accordance with the terms of this offer or a final counter offer.
B. **"Agreement"** means the terms and conditions of this accepted California Residential Purchase Agreement and any accepted counter offers and addenda.
C. **"C.A.R. Form"** means the specific form referenced or another comparable form agreed to by the parties.
D. **"Close Of Escrow"** means the date the grant deed, or other evidence of transfer of title, is recorded. If the scheduled close of escrow falls on a Saturday, Sunday or legal holiday, then close of escrow shall be the next business day after the scheduled close of escrow date.
E. **"Copy"** means copy by any means including photocopy, NCR, facsimile and electronic.
F. **"Days"** means calendar days, unless otherwise required by Law.
G. **"Days After"** means the specified number of calendar days after the occurrence of the event specified, not counting the calendar date on which the specified event occurs, and ending at 11:59PM on the final day.
H. **"Days Prior"** means the specified number of calendar days before the occurrence of the event specified, not counting the calendar date on which the specified event is scheduled to occur.
I. **"Electronic Copy"** or **"Electronic Signature"** means, as applicable, an electronic copy or signature complying with California Law. Buyer and Seller agree that electronic means will not be used by either party to modify or alter the content or integrity of this Agreement without the knowledge and consent of the other.
J. **"Law"** means any law, code, statute, ordinance, regulation, rule or order, which is adopted by a controlling city, county, state or federal legislative, judicial or executive body or agency.
K. **"Notice to Buyer to Perform"** means a document (C.A.R. Form NBP), which shall be in writing and Signed by Seller and shall give Buyer at least 24 hours (or as otherwise specified in paragraph 14C(1)) to remove a contingency or perform as applicable.
L. **"Repairs"** means any repairs (including pest control), alterations, replacements, modifications or retrofitting of the Property provided for under this Agreement.
M. **"Signed"** means either a handwritten or electronic signature on an original document, Copy or any counterpart.
N. Singular and Plural terms each include the other, when appropriate.

FR 041

Copyright © 1991-2002, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
RPA-CA REVISED 10/02 (PAGE 6 OF 8)

Buyer's Initials ( _____ )( _____ )
Seller's Initials ( _____ )( _____ )
Reviewed by _____ Date _____




**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 6 OF 8)**

T7846509.ZFX

Property Address: 1860A Ellis Street, San Francisco, CA 94115                              Date: May 5, 2003

**27. AGENCY:**

**A. DISCLOSURE:** Buyer and Seller each acknowledge prior receipt of C.A.R. Form AD "Disclosure Regarding Real Estate Agency Relationships."

**B. POTENTIALLY COMPETING BUYERS AND SELLERS:** Buyer and Seller each acknowledge receipt of a disclosure of the possibility of multiple representation by the Broker representing that principal. This disclosure may be part of a listing agreement, buyer-broker agreement or separate document (C.A.R. Form DA). Buyer understands that Broker representing Buyer may also represent other potential buyers, who may consider, make offers on or ultimately acquire the Property. Seller understands that Broker representing Seller may also represent other sellers with competing properties of interest to this Buyer.

**C. CONFIRMATION:** The following agency relationships are hereby confirmed for this transaction:
Listing Agent _____ Realty World Prime Estate _____ (Print Firm Name) is the agent
of (check one): ☒ the Seller exclusively; or ☐ both the Buyer and Seller.
Selling Agent _____ Land & Property Investment-Hometrend _____ (Print Firm Name) (if not same
as Listing Agent) is the agent of (check one): ☒ the Buyer exclusively; or ☐ the Seller exclusively; or ☐ both the Buyer and
Seller. Real Estate Brokers are not parties to the Agreement between Buyer and Seller.

**28. JOINT ESCROW INSTRUCTIONS TO ESCROW HOLDER:**

**A.** The following paragraphs, or applicable portions thereof, of this Agreement constitute the joint escrow instructions of Buyer and Seller to Escrow Holder, which Escrow Holder is to use along with any related counter offers and addenda, and any additional mutual instructions to close the escrow: 1, 2, 4, 12, 13B, 14E, 18, 19, 24, 25B and C, 26, 28, 29, 32A, 33 and paragraph D of the section titled Real Estate Brokers on page 8. If a Copy of the separate compensation agreement(s) provided for in paragraph 29 or 32A, or paragraph D of the section titled Real Estate Brokers on page 8 is deposited with Escrow Holder by Broker, Escrow Holder shall accept such agreement(s) and pay out from Buyer's or Seller's funds, or both, as applicable, the Broker's compensation provided for in such agreement(s). The terms and conditions of this Agreement not set forth in the specified paragraphs are additional matters for the information of Escrow Holder, but about which Escrow Holder need not be concerned. Buyer and Seller will receive Escrow Holder's general provisions directly from Escrow Holder and will execute such provisions upon Escrow Holder's request. To the extent the general provisions are inconsistent or conflict with this Agreement, the general provisions will control as to the duties and obligations of Escrow Holder only. Buyer and Seller will execute additional instructions, documents and forms provided by Escrow Holder that are reasonably necessary to close the escrow.

**B.** A Copy of this Agreement shall be delivered to Escrow Holder within 3 business days after Acceptance (or ☐ _____ ). Buyer and Seller authorize Escrow Holder to accept and rely on Copies and Signatures as defined in this Agreement as originals, to open escrow and for other purposes of escrow. The validity of this Agreement as between Buyer and Seller is not affected by whether or when Escrow Holder Signs this Agreement.

**C.** Brokers are a party to the escrow for the sole purpose of compensation pursuant to paragraphs 29, 32A and paragraph D of the section titled Real Estate Brokers on page 8. Buyer and Seller irrevocably assign to Brokers compensation specified in paragraphs 29 and 32A, respectively, and irrevocably instruct Escrow Holder to disburse those funds to Brokers at Close Of Escrow or pursuant to any other mutually executed cancellation agreement. Compensation instructions can be amended or revoked only with the written consent of Brokers. Escrow Holder shall immediately notify Brokers: (i) if Buyer's initial or any additional deposit is not made pursuant to this Agreement, or is not good at time of deposit with Escrow Holder; or (ii) if Buyer and Seller instruct Escrow Holder to cancel escrow.

**D.** A Copy of any amendment that affects any paragraph of this Agreement for which Escrow Holder is responsible shall be delivered to Escrow Holder within 2 business days after mutual execution of the amendment.

**29. BROKER COMPENSATION FROM BUYER:** If applicable, upon Close Of Escrow, Buyer agrees to pay compensation to Broker as specified in a separate written agreement between Buyer and Broker.

**30. TERMS AND CONDITIONS OF OFFER:**

This is an offer to purchase the Property on the above terms and conditions. All paragraphs with spaces for initials by Buyer and Seller are incorporated in this Agreement only if initialed by all parties. If at least one but not all parties initial, a counter offer is required until agreement is reached. Seller has the right to continue to offer the Property for sale and to accept any other offer at any time prior to notification of Acceptance. Buyer has read and acknowledges receipt of a Copy of the offer and agrees to the above confirmation of agency relationships. If this offer is accepted and Buyer subsequently defaults, Buyer may be responsible for payment of Brokers' compensation. This Agreement and any supplement, addendum or modification, including any Copy, may be Signed in two or more counterparts, all of which shall constitute one and the same writing.

FR 042

Copyright © 1991-2002, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
RPA-CA REVISED 10/02 (PAGE 7 OF 8)

Buyer's initials ( _____ )( _____ )
Seller's Initials ( _____ )( _____ )
Reviewed by _____ Date _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 7 OF 8)**

**EDMUND G. BROWN JR.**
*Attorney General*

*State of California*
**DEPARTMENT OF JUSTICE**



**PUBLIC INQUIRY UNIT**
P.O. BOX 944255
SACRAMENTO, CA 94244-2550
(916) 322-3360
TOLL FREE: (800) 952-5225
TTY: CA Relay Service
(800) 735-2922

March 25, 2008

PIU: 210572

Mr. Frank Rupp
439 Butterfield
Cathedral City, CA 92234

RE:  **Request for Assistance**

Dear Mr. Rupp:

Thank you for your letter to the Office of Attorney General Edmund G. Brown Jr. requesting a criminal investigation.

If you have information about a crime, please file a report with the police or sheriff's department in the area where the crime occurred. Local law enforcement authorities are responsible for investigating violations of law within their jurisdictions. After investigating the crime, the local law enforcement authorities may forward the case to the county district attorney's office for prosecution, if appropriate. The decision whether or not to file criminal charges will then be made by the locally elected district attorney.

In addition, please understand that we are unable to assist you because the Attorney General has no jurisdiction in matters already before the court or in matters where the courts have already rendered a decision. In addition, we are prohibited by law from representing private individuals or providing legal advice, legal research or legal analysis to private individuals under any circumstances.

Therefore, we suggest that you consult with a private attorney to determine any civil remedies that may be available to you. An attorney would directly represent your interests and is the one whose advice would be most helpful to you.

Again, thank you for contacting the Office of the Attorney General.

Sincerely,

M. Vega

M. Vega
Public Inquiry Unit

For    EDMUND G. BROWN JR.
Attorney General

**Exhibit 4**

JS 44 (Rev. 12/07) (cand rev 1-08)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON PAGE TWO OF THE FORM.)

## I. (a) PLAINTIFFS
Douglas J. Gould
Frank W. Rupp

### DEFENDANTS
FIRST AMERICAN TITLE

**SBA**

**(b)** County of Residence of First Listed Plaintiff
(EXCEPT IN U.S. PLAINTIFF CASES)

MARIN

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

Southern California

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Pro Per

Attorneys (If Known)

UNKNOWN

Filing

**ADR**

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury — | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | **LABOR** | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | ☐ 710 Fair Labor Standards | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | Act | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | & Disclosure Act | | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | Security Act | ☐ 871 IRS—Third Party | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | 26 USC 7609 | ☐ 900 Appeal of Fee |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities— | ☐ 540 Mandamus & Other | **IMMIGRATION** | | Determination |
| | Employment | ☐ 550 Civil Rights | ☐ 462 Naturalization Application | | Under Equal Access |
| | ☐ 446 Amer. w/Disabilities— | ☐ 555 Prison Condition | ☐ 463 Habeas Corpus – | | to Justice |
| | Other | | Alien Detainee | | ☐ 950 Constitutionality of |
| | ☐ 440 Other Civil Rights | | ☐ 465 Other Immigration | | State Statutes |
| | | | Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)
- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
American Disabilities Act of 1990
Brief description of cause:
Have caused personal harm

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE "NOTICE OF RELATED CASE".
07-5954 MHP and Judge Berry

Reno district court
Dept 1

## IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2)
(PLACE AND "X" IN ONE BOX ONLY)
☒ SAN FRANCISCO/OAKLAND   ☐ SAN JOSE

Rupp First Amer Title Com. v FRANK RUPP

DATE
4-11-08

SIGNATURE OF ATTORNEY OF RECORD
Douglas J. Gould
pro per.

08-009 SBA